UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 13-409-KSF

ACUITY, A MUTUAL INSURANCE
COMPANY                                                                                           PLAINTIFF

v.                                                    **OPINION & ORDER**

JADE ENTERPRISES and
HAROLD JOLLY                                                                                   DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion of the Defendant, Harold Jolly, to dismiss this declaratory judgment action based on the holding in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). For the reasons set forth below, the Court agrees that dismissal of the claims without prejudice is appropriate.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On May 4, 2013, the defendant, Harold Jolly, an employee of the co-defendant, Jade Enterprises, was involved in an automobile accident in Madison County, Kentucky. Both automobiles involved in Jolly's accident were owned by Jade Enterprises. Jade Enterprises contends that Jolly voluntarily agreed to pay for the property damage to the vehicles. After Jolly later refused to pay for the property damage, Jade Enterprises filed a property damage claim in Madison County District Court on July 26, 2013. Specifically, Jade Enterprises alleged breach of contract for payment of damages caused to two of its trucks in the amount of $3,815.83. Jolly subsequently

1

asserted a counterclaim against Jade Enterprises, alleging a number of employment-related claims against Jade Enterprises. As a result, the matter was transferred to Madison Circuit Court, where it is currently pending.

Acuity, a Mutual Insurance Company ("Acuity"), the plaintiff in this action, insures Jade Enterprises. However, due to the nature of the claims asserted against Jade Enterprises and the insuring agreement and exclusions in the policy, Acuity contends that Jade Enterprises is not entitled to any coverage for the losses and/or claims asserted in Jolly's Counterclaim. Acuity now petitions this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to adjudicate and determine the rights and responsibilities it has under the contract of insurance issued to Jade Enterprises [DE #1]. Although Acuity's Complaint names both Jolly and Jade Enterprises as defendants, the record does not reflect service upon Jade Enterprises, and there is no evidence that Jade Enterprises has been served with the summons or Complaint. Jolly, however, has filed this motion to dismiss, arguing that the Court should exercise its discretion to decline to decide this declaratory judgment action [DE #5].

## II. ANALYSIS

There is no dispute that this case meets the basic standard for diversity jurisdiction under 28 U.S.C. § 1332. However, it is also well-settled that district courts have discretion "in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996). As the Supreme Court has explained, the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. It has been

explained that the Declaratory Judgment Act "confers discretion on courts, not rights on litigants." *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986)(citing *Green v. Mansour*, 474 U.S. 64 (1985))(noting that "the propriety of issuing a declaratory judgment may depend on equitable considerations"). "[W]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate." *Id*. Simply, even when the Court may otherwise exercise jurisdiction, it is "under no compulsion" to do so. *Wilton*, 515 U.S. at 278.

When considering whether to exercise discretionary jurisdiction under the Declaratory Judgment Act, the Sixth Circuit has identified five factors to be evaluated. These factors are:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id*. at 346. This list, however, is not exhaustive. Rather, "the Court must make a full inquiry into all relevant considerations." *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp.2d 689, 692 (E.D.Ky. 2002).

**A.  SETTLEMENT OF CONTROVERSY/CLARIFICATION OF LEGAL RELATIONS AT ISSUE**

Because the first two factors are closely related, courts often consider them together. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). First, this Court must determine

whether the requested judgment would settle the controversy. Jolly contends that because the underlying matter involves property damage and the claims he asserts in his counterclaim, the controversy will not be resolved by the Declaratory Judgment action currently before this Court. On the other hand, Acuity argues that the Declaratory Judgment action would settle the matter before this Court between Acuity and Jade Enterprises.

Courts are divided when examining the question of whether a federal claim to limit insurance coverage will settle the controversy between two parties. *See Flowers*, 513 F.3d at 555. Some courts have held that while declaratory relief might clarify the legal relationship between the insurer and insured, it does not ultimately settle the controversy between the parties that is ongoing in state court. *See Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties"); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 F.App'x 562, 565 (6th Cir. 2006); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Grand Truck*, 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case."). Other courts have held that while declaratory relief will not help resolve the underlying state court action, this factor can still weigh in favor of accepting jurisdiction because the requested relief can settle the limited controversy between the insurer and insured. *See West Am. Ins. Co. v. Prewitt*, 208 F.App'x 393, 396 (6th Cir. 2006); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)("[W]hile the

4

declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland has a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987)("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue.").

There is also a split concerning the second factor - whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue. *Compare Flowers*, 513 F.3d at 557 (merely clarifying the legal relations at issue in the federal case is sufficient to satisfy the factor) *with Travelers Indem.*, 495 F.3d at 272 (satisfying factor requires the decision to clarify legal relations in both federal and state action ) and *Bituminous Ca. Corp.*, 373 F.3d at 814 (same).

The present case arises out of an ongoing state-court dispute. While a resolution of this case would settle the limited coverage controversy between the insurer and insured, it would do little to clarify or bring resolution to the state court claims. In fact, it is possible that judgment by this Court could subject the parties to conflicting rulings on questions of fact that are important in each case, such as whether Jolly was in the course and scope of his employment at the time of the collision that caused the property damage. As a result, out of policy considerations for encouraging consolidated litigation in one court over piecemeal litigation of separate claims in separate courts, the Court adopts the reasoning that, in order to serve a useful purpose, litigation must settle the broader controversy between the parties. In view of the Sixth Circuit's holdings in *Travelers, Bituminous*, and *Grand Trunk*, the Court believes that the first two factors weigh against accepting jurisdiction because the Court would, at best, settle a very limited issue within a much broader, ongoing dispute.

## B. RACE FOR RES JUDICATA

The third factor - whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata" - is intended to prevent parties from forum shopping and filing actions in federal court with the sole purpose of gaining a favorable forum. *See Grand Trunk*, 746 F.2d at 326. There is no evidence that Acuity has filed this action to obtain a favorable forum or engage in a "race for res judicata." The Court will not impute such an improper motive here. Without any evidence that Acuity is engaged in procedural fencing, this factor weights in favor of exercising jurisdiction.

## C. FRICTION BETWEEN FEDERAL AND STATE COURTS

Next, the Court must consider whether exercising jurisdiction would increase the friction between state and federal courts or improperly encroach upon the state courts' jurisdiction. In a case like this, "competing state and federal interests weigh in the balance." *Adrian Energy Associates v. Mich. Public Service Comm.*, 481 F.3d 414, 421 (6th Cir. 2007). As a result, courts should be "particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Id*. In fact, the Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).

The existence of a state court proceeding, however, is not the only factor to be considered. The Sixth Circuit has developed the following three sub-factors to aid the district court in analyzing this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). Turning to the first sub-factor, the Court must determine if resolution of the declaratory judgment action will require making factual findings that may conflict with a state court's findings on the same issue. If so, the "exercise of jurisdiction would be inappropriate." *Flowers*, 513 F.3d at 560. Acuity argues that the only issues before this Court are the rights and obligations under the policy of insurance. However, at issue before the state court, and this Court, is whether or not Jolly was in the course and scope of his employment at the time of the collision that caused the property damage. Because resolution of the declaratory judgment action hinges on resolution of facts at issue in the underlying case, the Court believes it is important to avoid subjecting the parties to competing rulings on those issues. *See Travelers*, 495 F.3d at 272; *see also Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1999)(noting that "[w]ithout any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts"). As a result, the first sub-factor weighs against the exercise of jurisdiction.

The second sub-factor directs the Court to consider which court -federal or state court -is in a better position to evaluate the claims. In *Travelers*, the Sixth Circuit explained that when

"Kentucky law is controlling . . . Kentucky courts are in the better position to apply and interpret its law on these issues." 495 F.3d at 272. The central issue in the declaratory judgment action is whether Acuity owes a duty of coverage to Jade Enterprises. Certainly, this is an issue of state law. The Kentucky court is equally, if not more, capable of resolving questions of Kentucky law, including Acuity claims. Accordingly, the second sub-factor also weighs against the exercise of jurisdiction.

The third sub-factor focuses on the nexus between the underlying factual and legal issues and any state law or public policy concerns. The Sixth Circuit has held that "issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore better able to resolve." *Flowers*, 513 F.3d at 561 (quoting *Travelers*, 495 F.3d at 273); *see also Mercier*, 913 F.2d at 279 (noting that "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation"). Here, there is a close nexus between the issues in this case - insurance coverage - and questions of state public policy. Kentucky state courts are in the better position to identify and apply those policy interests and this sub-factor weighs against exercising jurisdiction over Acuity's claims.

After analyzing all three sub-factors, this Court finds that while it could hear this case, exercising jurisdiction would cause unnecessary tension between the state and federal courts and the thus, the forth factor in the Court's analysis weighs strongly against such exercise.

### D.   AVAILABILITY OF ALTERNATIVE REMEDY

The last factor to be considered by the Court is whether there is an alternative remedy that is more effective. *See Grand Trunk*, 746 F.2d 326. The obvious alternative remedy is for Acuity

8

to seek declaratory judgment in state court. Kentucky law specifically provides for such a remedy in KRS 418.040, which provides:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS 418.040. Alternatively, Acuity could file an indemnity action at the conclusion of the state action. *See Flowers*, 513 F.3d at 562. If either of these remedies are "better or more effective," then this factor weighs against exercising jurisdiction over this matter. *Grand Trunk*, 746 F.2d at 326.

The Sixth Circuit is divided regarding whether the possibility of seeking declaratory relief or indemnity in state court cuts for or against exercising jurisdiction. *Flowers*, 513 F.3d at 562 (comparing *Northland*, 327 F.3d at 448 ("[I]ntervening in the state court action would not have necessarily provided a better or more effective alternative remedy,") with *Travelers*, 495 F.3d at 273 (finding that the alternative remedies of a state declaratory judgment or indemnity action "weighed against federal discretionary jurisdiction"), and *Bituminous*, 373 F.3d at 815 (finding that plaintiff "could have presented its case to the same court that will decide the underlying tort action" and that "a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action")). In light of these cases, the Court finds that the fifth factor is neutral. While Acuity certainly has alternative remedies available, it would be difficult for this Court to conclude that one would be better for Acuity than the option Acuity chose for itself. This factor, thus, bears little on the Court's analysis.

### E. BALANCING THE FACTORS

After examining the relevant factors outlined by the Sixth Circuit, the Court finds that

exercising jurisdiction would be improper in this case. Three of the five factors counsel against exercising jurisdiction, one counsels in favor, and the fifth is neutral. After making "a full inquiry into all relevant considerations," *Brotherhood*, 200 F.Supp.2d at 692, the Court is not convinced that accepting jurisdiction over this dispute would serve a useful purpose. The dispute solely raises questions of state law and there has been no indication that the state court is not in a position to define or apply its own law in a fair and impartial manner. *See Evans*, 791 F.2d at 63. Acuity has not made a compelling case for this Court to insert itself into the state-court dispute and utilize its time and resources to resolve a narrow piece of that dispute.

### III. CONCLUSION

In light of the "unique and substantial" discretion that the Declaratory Judgment Act confers on district courts, *Wilton*, 515 U.S. at 286, the Court declines to exercise subject-matter jurisdiction over Acuity's complaint. Accordingly, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Jolly's motion to dismiss [DE #5] is **GRANTED**;

(2) this action is **DISMISSED WITHOUT PREJUDICE** to refiling in the pending state court action.

This January 30, 2014.



Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**